LESLIE DAVIS, Administrator of the Estate of LEANA PATRICIA TRONCONY,
Deceased, Employee, JOSE TRONCONY, Father of LEANA PATRICIA
TRONCONY, Deceased, Employee, Plaintiffs v. TRUS JOIST MacMILLAN,
Employer, SELF-INSURED (AIG CLAIM SERVICES, Servicing Agent), Defendant

No. COA01-81

(Filed 2 January 2002)

**1. Workers' Compensation— death benefits for parents—willful abandonment—child support arrears**

The Industrial Commission did not err by concluding that the deceased employee's father was precluded from sharing in any workers' compensation death benefits under N.C.G.S. § 97-40 based on the father's willful abandonment of both the care and maintenance of his child, because: (1) in order to rehabilitate, a parent must resume the care and maintenance of a child, not just one or the other; and (2) there was competent evidence to support the findings that the father did not make consistent payments of court ordered child support, the father was still in arrears of his child support obligations eight-and-a-half years after his support obligations should have ended, the father never showed any interest in the lives of his daughters although he had visitation rights under the child custody order, and the father did not even attend his daughter's funeral even though he resided where the funeral took place and was notified in advance of the arrangements.

**2. Workers' Compensation— jurisdiction—reduction of attorney fees**

Although plaintiffs contend the Full Industrial Commission erred in a workers' compensation case by reducing the Deputy Commissioner's award of attorney fees under N.C.G.S. § 97-90 when the Full Commission included no reasons for the reduction, the Court of Appeals is without jurisdiction to hear the issue, because any dispute as to attorney fees must be appealed according to the procedures set out in N.C.G.S. § 97-90(c).

Appeals by plaintiffs Jose Troncony, Leslie Davis, and Gladys Guzman from opinion and award of the North Carolina Industrial Commission filed 17 October 2000. Heard in the Court of Appeals 27 November 2001.

**DAVIS v. TRUS JOIST MacMILLAN**

[148 N.C. App. 248 (2002)]

*Bollinger & Piemonte, PLLC, by Bobby L. Bollinger, Jr., for plaintiff-appellant Jose Troncony.*

*Casstevens, Hanner, Gunter & Riopel, P.A., by Robert P. Hanner, II and Mark D. Riopel, for plaintiff-appellants Leslie Davis and Gladys Guzman.*

*No brief filed for defendant appellee.*

GREENE, Judge.

Jose Troncony (Troncony) appeals an opinion and award of the Full Commission of the North Carolina Industrial Commission (the Full Commission) filed 17 October 2000 denying him any workers' compensation death benefits as the father of Leana Patricia Troncony (Patricia), deceased, under N.C. Gen. Stat. § 97-40. Leslie Davis (Davis), the administrator of Patricia's estate, and Gladys Guzman (Guzman), Patricia's mother, appeal the Full Commission's reduction of attorney's fees in its October 17 opinion and award.

On 20 February 1998, Patricia was killed in a motor vehicle accident during the course and scope of her employment with Trus Joist MacMillan (MacMillan). MacMillan conceded liability for payment of workers' compensation death benefits under N.C. Gen. Stat. § 97-38 but sought an allocation of those death benefits from the Industrial Commission. Guzman and Troncony were the only two individuals with a claim to Patricia's workers' compensation death benefits.

The evidence presented to the deputy commissioner established that Guzman and Troncony were married in 1966. Patricia was born on 4 December 1970. She had two sisters, Rose Mary, born 11 May 1967, and Davis, born 14 June 1972. Guzman and Troncony separated in 1973 and divorced on 25 April 1977, at which time the trial court entered a judgment awarding the "permanent care, custody and control" of the three minor children to Guzman. The trial court also ordered Troncony to pay child support for the support of all three children in the amount of $60.00 per week.[1]

According to Guzman, Troncony paid the court-ordered support only "sporadically," on average failing to pay support two or three months out of the year. On 23 June 1987, Guzman initiated an action against Troncony in juvenile court in an effort to collect past due child support and force payment of the ongoing child support order.

---

1. This amount was never adjusted for inflation and the share allocated for Patricia's needs was only $20.00 per week.

Guzman testified that at the time of the proceeding in juvenile court Troncony was between $2,000.00 and $5,000.00 in arrears with his child support obligations. Troncony testified that when he did get behind on his payments, it was because he was unable to work due to a lack of jobs in his weather-sensitive construction occupation.

The juvenile court entered a new order for child support that superceded the 1977 child support order. This order, however, did not improve the consistency of Troncony's child support payments. According to Guzman's testimony before the deputy commissioner, Troncony never made all the support payments that were required of him. A child support printout from the juvenile court indicates that on 25 January 1999 Troncony was still $582.14 in arrears in his support obligations.

From approximately 14 September 1988 until 4 December 1988, the date Patricia reached the age of majority, Troncony made no child support payments. Troncony testified that on or about 14 September 1988, he received a letter from the juvenile court notifying him that Guzman and the children had moved and the juvenile court did not have a forwarding address, thus creating the potential that the juvenile court might not be able to credit any of Troncony's payments. Troncony also testified he was diagnosed with gall bladder disease during this time and had to return to his native Honduras for surgery as he lacked the health insurance to have the necessary operation performed in the United States.

Following the divorce, Troncony was granted visitation with his children for five hours every Sunday, during which time he claimed he would often take them to the city park. Troncony explained that as the kids got older, the visitation lessened because the girls would not be ready when Troncony came to pick them up. Davis' only recollection of her father, however, was in 1984 when she attended the World's Fair in New Orleans with Troncony and her sisters. Neither Davis nor Rose Mary saw Troncony after that date. Testimony further revealed that Troncony neither telephoned nor wrote his children for their birthdays, graduations, or other important events in their lives, nor did he send them Christmas presents. When Davis suffered from seizures and was hospitalized in 1984, Troncony did not contact her in any way. When Patricia was growing up, she was hospitalized with pneumonia. Troncony did not contact or visit her either. Troncony also did not attend the graduations of any of his children from high school and was not present at their church confirmation. Guzman admitted that she and the girls did not invite Troncony to participate

in such special events, but she also did not discourage Troncony from being involved in his children's lives. Finally, Troncony did not attend Patricia's funeral even though evidence indicates Guzman's husband contacted Troncony's residence and passed along the information concerning the wake and the funeral.

The deputy commissioner concluded Troncony willfully abandoned his minor daughter Patricia. On appeal, the Full Commission found in pertinent part that:

> 5. Following the divorce, [Troncony] did not make consistent payment[s] of the court-ordered support. By 1987, his support payments were in arrears, such that [Guzman] went back to court to seek an order for payment of the arrearage.
>
> . . . .
>
> 7. . . . Although they lived in the same town [prior to 1988], [Troncony] did not visit his three daughters.
>
> 8. When [Patricia] was in the fifth grade, she was ill and in the hospital. Although [Guzman] called and told [Troncony] about it, [he] did not visit her. Leslie was also sick and in the hospital in 1984, and [Troncony] did not visit her.
>
> 9. Since the [parties'] separation, [Troncony] has never shown any interest in the lives of his daughters or acted as a true parent to them. He did not send cards, letters, or gifts to his daughters over the years. He never called them on the telephone. He never attended any day-to-day events or any special events in their lives, such as their confirmation in the Catholic Church or high school graduations. [Guzman] never prevented [Troncony] from visiting his daughters, and the court order gave him visitation rights.
>
> 10. . . . [Troncony] has had virtually no contact with his daughters from 1973 and continuing to date.
>
> . . . .
>
> 12. The funeral services for [Patricia] were held in New Orleans. Although he resided in New Orleans and was notified in advance of the arrangements of the wake and funeral service for [Patricia], [Troncony] did not attend either. He did not call to express any condolences or send any notes to his other daughters or to [Guzman].

13. [Troncony] failed to meet his child support obligations during the year prior to [Patricia's] majority.

. . . .

15. There is no evidence that [Troncony] ever performed any parental duties or provided any emotional support or care for [Patricia].

16. At the time of the February 22, 1999 hearing before the [d]eputy [c]ommissioner, [Troncony] was still in arrears with his child support requirements, even though his obligation to [Guzman] should have terminated in 1990.

Accordingly, the Full Commission concluded that "[d]ue to [Troncony's] willful abandonment of the care and support of his daughter, [Patricia], [he] is not entitled to any benefits as next of kin pursuant to N.C. Gen. Stat. § 97-40." The Full Commission upheld the deputy commissioner's award of the entire workers' compensation death benefits to Guzman.

The law firm representing Davis and Guzman submitted an agreement for attorney's fees to the deputy commissioner, providing for twenty-five percent of the recovery. The deputy commissioner found the agreement inappropriate and awarded reasonable attorney's fees of $15,000.00 to the law firm. The award of attorney's fees was not appealed to the Full Commission. Upon appeal by Troncony to the Full Commission on different grounds, the Full Commission reduced this award to $12,000.00 while adopting verbatim the deputy commissioner's reasoning for granting the original $15,000.00 attorney fee award.

The issues are whether: (I) Troncony willfully abandoned the care and maintenance of Patricia and thus is precluded from sharing in any workers' compensation death benefits as Patricia's next of kin pursuant to N.C. Gen. Stat. § 97-40; and (II) this Court has jurisdiction to determine whether the Full Commission erred in reducing the deputy commissioner's award of attorney's fees.

I

[1] Troncony argues N.C. Gen. Stat. § 97-40 requires the willful abandonment of both the care and maintenance of a minor child before a parent is precluded from sharing in the workers' compensation death benefits of a deceased child. Because Troncony substantially complied with his child support obligations over the years and thus did

**DAVIS v. TRUS JOIST MacMILLAN**

[148 N.C. App. 248 (2002)]

not abandon the maintenance of Patricia, Troncony contends he cannot be found to have willfully abandoned Patricia.[2]

Section 97-40 prohibits the disbursement of workers' compensation death benefits to:

> a parent who has willfully abandoned the care and maintenance of his or her child and who has not resumed its care and maintenance at least one year prior to the first occurring of the majority or death of the child and continued its care and maintenance until its death or majority.

N.C.G.S. § 97-40 (1987). Contrary to Troncony's assertion, the words "care and maintenance" are not to be read separately but instead combined to define a parent's overall responsibilities. This is evident from the phrasing of the statute. If abandonment of *both* care and maintenance were required to terminate a parent's right to share in a child's workers' compensation death benefits, the renewed assumption of either care or maintenance within one year "prior to the first occurring of the majority or death of the child" would necessarily rehabilitate the parent. *See* N.C.G.S. § 97-40. The language of the statute, however, requires that, in order to rehabilitate, a parent must resume the "care and maintenance" of the child, not just one or the other. *Id.* This signifies that the words are indivisible, representing a single concept. *See id.* Consequently, the analysis of whether a parent has "willfully abandoned the care and maintenance" of a child requires the consideration of numerous factors: the parent's display of love, care, and affection for the child and the parent's financial support and maintenance of the child. *See Lessard v. Lessard*, 77 N.C. App. 97, 101, 334 S.E.2d 475, 477 (1985), *affirmed*, 316 N.C. 546, 342 S.E.2d 522 (1986).

---

2. Troncony argues that in determining compliance with his obligation to provide financial support, substantial compliance is sufficient. The substantial compliance language is found in N.C. Gen. Stat. § 31A-2(2) and is only relevant to establish a parent's right to inherit from his child when that child dies intestate. N.C.G.S. § 31A-2(2) (1999). We acknowledge that prior to 1971, a parent's right to receive a child's workers' compensation death benefits turned on the application of section 31A-2. *See Smith v. Exterminators*, 279 N.C. 583, 184 S.E.2d 296 (1971). In 1971, however, the General Assembly amended section 97-40 so as to provide a method for determining when a parent loses the right to receive his child's workers' compensation death benefits, making it both unnecessary and inappropriate to look to section 31A-2 to determine the disqualification issue. N.C.G.S. § 97-40 (1971); *see also Trustees of Rowan Tech. v. Hammond Assocs.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985) (where two statutes "might apply to the same situation, the statute that deals more directly and specifically with the situation controls over the statute of more general applicability"). Accordingly, we reject Troncony's argument.

On appeal from the Full Commission, our review is limited to: errors of law; whether the Full Commission's findings are supported by competent evidence; and whether the findings justify the Full Commission's conclusions and decision. *Carpenter v. Tony E. Hawley, Contractors*, 53 N.C. App. 715, 717-18, 281 S.E.2d 783, 785, *disc. review denied*, 304 N.C. 587, 289 S.E.2d 564 (1981). Troncony assigns error to the Full Commission's findings (1) that he did not make "consistent" payments of the court ordered support and (2) that as of 22 February 1999, eight-and-a-half years after Troncony's support obligations should have ended, Troncony was still in arrears. There was competent evidence to establish both findings: Guzman testified that Troncony missed between two to three months of payments per year and never fulfilled all his support obligations; the juvenile court issued an order in 1987 to compel payment of the child support; and a January 1999 child support printout from the juvenile court indicated a remaining arrearage of $582.14. Additional findings entered by the Full Commission, to which there is no exception, reveal Troncony never showed "any interest in the lives of his daughters," although he had visitation rights under the custody order.[3] Indeed, Troncony did not even attend Patricia's funeral, although "he resided in New Orleans [where the funeral took place] and was notified in advance of the arrangements."

Based on these findings, which sufficiently incorporate the factors set out in section 97-40 and *Lessard*, the Full Commission correctly concluded Troncony's "willful abandonment of [Patricia's] care and support" precluded him from sharing in any of Patricia's workers' compensation death benefits. As the Full Commission's conclusion is supported by its findings and this conclusion justifies the award of the workers' compensation death benefits to Guzman, there was no error.

II

[2] Davis and Guzman argue the Full Commission either made a mistake or abused its discretion in reducing the Deputy Commissioner's award of attorney's fees when the Full Commission included no reasons for the reduction.

---

3. Troncony argues in his brief to this Court that because Guzman was given custody of Patricia in a court order in 1977, he was "deprived . . . of the care" of his daughter and cannot be found to have "abandoned" Patricia. We disagree. Although Guzman was given custody of the children in 1977, Troncony was given "reasonable visitation rights" and thus was given the opportunity to provide "care" for his children. Even if a non-custodial parent is not given any visitation rights, we are not prepared to hold that parent is deprived of the opportunity to provide "care" for his children.

N.C. Gen. Stat. § 97-90 sets out the process through which attorney's fees are approved by the Industrial Commission as well as the procedure for disputing a decision by the Industrial Commission on such matters. N.C.G.S. § 97-90 (1999); *Creel v. Town of Dover*, 126 N.C. App. 547, 551, 486 S.E.2d 478, 480 (1997). If an attorney submits a fee agreement to the "hearing officer or Commission" and the "agreement is found to be unreasonable by the hearing officer or Commission, the reasons therefor shall be given and what is considered to be reasonable fee allowed." N.C.G.S. § 97-90(c) (1999). Notice of appeal from such a decision must go to the Full Commission. *Id.* After the Full Commission renders a decision, the matter must be appealed to the senior resident judge of the superior court in the county in which the cause of action arose or in which the claimant resides." *Id.*

In this case, there was an agreement for attorney's fees which the law firm representing Davis and Guzman submitted to the deputy commissioner. The deputy commissioner, however, found the agreement inappropriate and awarded a reasonable attorney's fee of $15,000.00 to the law firm. Thereafter, the award of attorney's fees was not appealed to the Full Commission. Upon appeal by Troncony to the Full Commission on different grounds, the Full Commission reduced the attorney fee award to $12,000.00, and Davis and Guzman subsequently appealed the reduction to this Court. Davis and Guzman argue because they appealed from the Full Commission's reduction of attorney's fees, not the deputy commissioner's award of attorney's fees, the process outlined in section 97-90(c) does not apply to them. We disagree.

In *Creel*, this Court dismissed a plaintiff's appeal that assigned as error the Full Commission's failure to make a finding as to attorney's fees. *Creel*, 126 N.C. App. at 551, 486 S.E.2d at 480. The plaintiff had not appealed the Deputy Commissioner's failure to make such findings. *Id.* This Court nevertheless found section 97-90(c) to require appeal of the issue to the superior court. The same principles apply in this case. Because any dispute as to attorney's fees must be appealed according to the procedures set out in section 97-90(c), we are without jurisdiction to hear the issue and must dismiss the appeal of Davis and Guzman.

Affirmed in part; dismissed in part.

Judges McCULLOUGH and CAMPBELL concur.