TONJA RUSSELL, Employee, Plaintiff v. LABORATORY CORPORATION OF AMERICA, Employer and CONTINENTAL CASUALTY COMPANY, Carrier, Defendants

No. COA01-1044

(Filed 18 June 2002)

1. **Workers' Compensation— introduction of medical records—doctors not deposed**

   The Industrial Commission did not err in a workers' compensation action by sustaining defendant's objections to the introduction of medical records from doctors plaintiff saw after she moved to Florida where plaintiff offered the records during the deposition of the doctor who first saw plaintiff in the emergency room. Defendants had informed plaintiff that they would not stipulate to the introduction of the records, but would agree to depose the Florida doctors. The Commission determined that it was plaintiff's burden to schedule depositions of the doctors if she wanted to introduce their medical records, and noted that the emergency room doctor was not authorized to authenticate the records because he did not review or rely upon them in forming his opinions or testimony, and that he did not refer plaintiff to either doctor. There is evidence to support the Commission's ruling.

2. **Workers' Compensation— compensable brain injury—evidence not sufficient**

   The Industrial Commission did not err in a workers' compensation action by concluding that the evidence did not show a compensable brain injury where the Commission found that all of the physical examinations and testing showed no physical damage to the brain and made further findings pertaining to plaintiff's physically active lifestyle, her enrollment in college, and her articulate, alert demeanor at the hearing. It cannot be concluded that the decision to deny compensation was wholly arbitrary or manifestly unsupported by reason, although there may have been evidence to the contrary.

3. **Workers' Compensation— disfigurement of teeth—evidence not sufficient**

   The Industrial Commission did not err in a workers' compensation action by concluding that plaintiff was not entitled to compensation for disfigurement to her teeth where the teeth were

restored with composite resin and a root canal and the Commission held defendant responsible for that treatment. Plaintiff did not need extractions or crowns and it does not appear from the record that plaintiff presented evidence that the injury was so marring that she would suffer diminution of her future earning capacity. The injury did not rise to the level of a serious disfigurement warranting compensation under N.C.G.S. § 97-31(21).

**4. Workers' Compensation— attorney fees—limited—appeal procedure not followed**

The Court of Appeals did not have jurisdiction in a workers' compensation action to consider whether the Industrial Commission erred by limiting plaintiff's attorney fees where plaintiff did not follow statutory procedures for appealing the Commission's failure to approve plaintiff's fee agreement.

Appeal by plaintiff from an opinion and award entered 21 May 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 May 2002.

*Charles N. Stedman for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by Jeri L. Whitfield and Shannon J. Adcock, for defendant-appellees.*

HUNTER, Judge.

Tonja Russell ("plaintiff") appeals an opinion and award of the North Carolina Industrial Commission awarding her medical expenses and temporary total disability compensation but denying compensation for permanent partial impairment and disfigurement. We affirm.

On 29 May 1996, plaintiff was employed by defendant Laboratory Corporation of America, which was insured by Continental Casualty Company (collectively "defendants"). On that date, plaintiff fell when her foot became entangled in a stool at her workstation, causing her to strike her head on a counter top. Plaintiff was examined that day by emergency room doctor Charles Stewart, who conducted various tests on plaintiff. X-rays of plaintiff's cervical, lumbosacral spine and nasal passages showed no fractures, and an MRI, CT scan, and EEG of plaintiff's head revealed normal brain function. Dr. Stewart determined that plaintiff had suffered a concussion and scheduled her for

a follow-up visit. Plaintiff's fall also caused a tooth abscess and several chipped teeth, which teeth were restored with composite resin, and a root canal was performed.

Plaintiff returned to Dr. Stewart on 3 June 1996. Plaintiff exhibited minor symptoms of concussion but had normal mental status, and Dr. Stewart did not anticipate further visits unless plaintiff continued to experience symptoms. On 4 October 1996, plaintiff returned to Dr. Stewart complaining of headaches and fainting spells. Dr. Stewart ordered an MRI be performed, the result of which was normal. Dr. Stewart continued to treat plaintiff for headaches throughout 1996, 1997 and part of 1998.

Plaintiff resigned from her employment with defendants on 26 August 1997. Plaintiff held various other jobs following her resignation, and at the time of the hearing was taking college classes to become a physician's assistant. In 1998, plaintiff relocated to Florida where she sought treatment from Dr. Beena Stanley, a neurologist, and Dr. Rama Nathan, an ear, nose, and throat specialist.

In 1999, plaintiff underwent an independent medical examination by Dr. William Greenberg which confirmed that her MRI results were normal and that she exhibited normal mental status and speech function. Dr. Greenberg noted that plaintiff was very physically active, and that she played on a semi-professional softball team. Dr. Greenberg opined that plaintiff had reached maximum medical improvement, but that she would need to visit a physician approximately four times a year until her headaches were under control.

The Commission found as fact that plaintiff's headaches and tooth injuries were caused by her fall on 29 May 1996. Accordingly, it ordered defendants to pay all reasonable necessary medical expenses incurred by plaintiff for the treatment of her injuries. In addition, defendants were ordered to pay plaintiff temporary total disability for various periods of work which plaintiff missed as a result of her injuries. However, the Commission declined to award plaintiff for permanent partial impairment resulting from damage to an internal organ under N.C. Gen. Stat. § 97-31(24) (2001), and for serious facial or head disfigurement resulting from the damage to her teeth under N.C. Gen. Stat. § 97-31(21). Plaintiff appeals.

"The standard of appellate review of an opinion and award of the Industrial Commission is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent

evidence in the record; and (2) whether the Commission's findings justify its legal conclusions." *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 25, 514 S.E.2d 517, 520 (1999). The Commission's findings are conclusive on appeal if there is any competent evidence to support them; however, its conclusions of law are reviewable *de novo. Id.* at 26, 514 S.E.2d at 520.

[1] Plaintiff first argues that the Commission erred in sustaining defendants' objection to the introduction of the medical records of Drs. Stanley and Nathan which plaintiff offered into evidence during the deposition of Dr. Stewart. On 3 September 1999, prior to Dr. Stewart's deposition, defendants informed plaintiff by letter that they would not stipulate to the introduction of the medical records of Drs. Stanley and Nathan. Defendants informed plaintiff that they would agree to depose those doctors, which would have allowed for plaintiff to introduce the medical records, but plaintiff did not initiate those depositions. The Commission determined that it was plaintiff's burden to have scheduled the depositions of Drs. Stanley and Nathan if she had wanted to introduce their medical records.

The Commission upheld defendants' objection to the records' introduction, which objection came after Dr. Stewart's deposition.[1] In so ruling, the Commission noted that Dr. Stewart was not authorized to authenticate the records because he did not review or rely upon them in forming his opinions or testimony, and did not refer plaintiff to either Dr. Stanley or Dr. Nathan. There is evidence to support the Commission's ruling, as Dr. Stewart's deposition reveals that he did not refer plaintiff to either doctor, and that he only reviewed the medical records upon receiving them from plaintiff's attorney approximately one week prior to his deposition, and therefore did not rely upon them in diagnosing plaintiff. This argument is overruled.

[2] Plaintiff next argues that the Commission erred in concluding that the evidence failed to show that she sustained a compensable injury to her brain. The Commission made conclusions of law that as a result of her fall, plaintiff developed migraine headaches which caused her to be unable to work for particular periods of time, for which periods defendants were required to compensate plaintiff for temporary total disability. However, the Commission concluded that there was no evidence that plaintiff had sustained a brain injury that

---

1. The Commission determined that defendants had not waived their objection by failing to object during Dr. Stewart's deposition because the deposition stipulations' boilerplate language provided that objections would be preserved except those pertaining to the form of a question.

would entitle her to permanent partial impairment compensation for damage to an internal organ under N.C. Gen. Stat. § 97-31(24).

Under N.C. Gen. Stat. § 97-31(24), "[i]n case of the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation." *Id.* "By employing the word 'may' in N.C.G.S. § 97-31(24) the legislature intended to give the Industrial Commission discretion whether to award compensation under that section." *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986). Thus, the Commission has discretion as to whether an award under N.C. Gen. Stat. § 97-31(24) is warranted, and its decision will not be overturned on appeal unless it " 'is manifestly unsupported by reason,' " or " 'so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (citations omitted).

Here, the Commission made relevant findings of fact that on the date of the accident, 29 May 1996, x-rays, a CT head scan, and brain MRI and EEG tests were performed and all results indicated plaintiff had normal brain function; that an additional MRI was performed in October 1996 which indicated plaintiff had normal brain function; and that in June 1999 plaintiff underwent an independent medical examination wherein the results of her latest MRI were confirmed to be normal, her mental testing status and speech function were both normal, and the doctor observed that plaintiff was very physically active and had reached maximum medical improvement. The Commission found, in sum, that "[a]ll physical examinations and testing, such as the MRI's of the brain, show no physical damage to the brain." The Commission also made findings of fact pertaining to plaintiff's physically active lifestyle, her enrollment in college, and her articulate and alert demeanor at the hearing.

Plaintiff does not dispute that these findings were supported by the evidence, and that none of her medical tests, including her MRI's, x-rays, EEG, and CT scan, revealed anything but normal brain function. In light of these findings, we cannot conclude that the decision to deny compensation for a permanent brain injury under N.C. Gen. Stat. § 97-31(24) was wholly arbitrary or manifestly unsupported by reason, though there may have been evidence to the contrary.

[3] Plaintiff further argues that the Commission erred in concluding that she was not entitled to compensation for the "disfigurement" to her teeth because the damage did not require any extractions or

crowns. The Commission found as fact that plaintiff's fall caused her to chip her teeth and created one tooth abscess. Plaintiff's dentist restored the chipped teeth with composite resin and performed a root canal. The Commission made a conclusion of law that as a result of her compensable injury, plaintiff sustained damage to her teeth which required dental treatment and repair, for which treatment defendant was responsible. However, the Commission also concluded that plaintiff's dental work did not require any extractions or crowns, and that she was not entitled to compensation for "disfigurement" under N.C. Gen. Stat. § 97-31(21).

Under N.C. Gen. Stat. § 97-31(21), "[i]n case of serious facial or head disfigurement, the Industrial Commission shall award proper and equitable compensation not to exceed twenty thousand dollars ($20,000)." *Id.* Plaintiff does not dispute that she was not required to undergo extractions or have crowns placed on her teeth, but argues that the injury to her teeth already, or will in the future, constitute "serious facial or head disfigurement."

The issue of whether an employee has suffered "serious facial or head disfigurement" is a question of fact to be resolved by the Commission. *Davis v. Construction Co.*, 247 N.C. 332, 337, 101 S.E.2d 40, 44 (1957). In *Davis*, our Supreme Court expounded on the concept of serious disfigurement:

> Under our decisions, there is a serious disfigurement in law only when there is a serious disfigurement in fact. A serious disfigurement in fact is a disfigurement that mars and hence adversely affects the appearance of the injured employee to such extent that it may be reasonably presumed to lessen his opportunities for remunerative employment and so reduce his future earning power. True, no present loss of wages need be established; but to be serious, the disfigurement must be of such nature that it may be fairly presumed that the injured employee has suffered a diminution of his future earning power.

*Id.* at 336, 101 S.E.2d at 43 (emphasis omitted).

In this case, plaintiff did not lose any teeth and it does not appear from the record that she presented any evidence tending to show that the injury to her teeth was of such a marring nature that she would suffer diminution in her future earning capacity. Moreover, as noted in the section of the Commission's Ratings Guide pertaining to disfigurement of teeth, compensation for disfigurement is paid where teeth

have been extracted due to accidental injury, and where teeth are crowned, fifty percent of the value of the tooth will be awarded. However, the Ratings Guide provides that "[i]f the tooth is merely chipped and a cap-type repair is done, then, of course, no compensation would be paid for disfigurement." We agree with the Commission that the injury to plaintiff's teeth did not rise to the level of a serious disfigurement warranting compensation under N.C. Gen. Stat. § 97-31(21). This argument is overruled.

[4] Finally, plaintiff argues that the Commission erred in limiting plaintiff's attorney's fees to twenty-five percent of the net compensation awarded plaintiff. Plaintiff states in her brief that her attorney submitted to the deputy commissioner a copy of an agreement between the attorney and plaintiff establishing counsel would be entitled to a thirty-three and one-third percent contingent fee. Both the deputy commissioner and the Full Commission ordered that plaintiff's counsel would receive twenty-five percent of the net compensation awarded plaintiff, and that this percentage was a reasonable attorney's fee.

Plaintiff argues that the Commission's failure to cite reasons why it did not approve a fee of thirty-three and one third percent was erroneous, and requires that we direct the Commission to order that this amount be provided to plaintiff's counsel. In support of this argument, plaintiff cites N.C. Gen. Stat. § 97-90(c) (2001) which provides:

> (c) If an attorney has an agreement for fee or compensation under this Article, he shall file a copy or memorandum thereof with the hearing officer or Commission prior to the conclusion of the hearing. If the agreement is not considered unreasonable, the hearing officer or Commission shall approve it at the time of rendering decision. If the agreement is found to be unreasonable by the hearing officer or Commission, the reasons therefor shall be given and what is considered to be reasonable fee allowed.

N.C. Gen. Stat. § 97-90(c). However, the statute further provides:

> If within five days after receipt of notice of such fee allowance, the attorney shall file notice of appeal to the full Commission, the full Commission shall hear the matter and determine whether or not the attorney's agreement as to a fee or the fee allowed is unreasonable. If the full Commission is of the opinion that such

agreement or fee allowance is unreasonable and so finds, then the attorney may, by filing written notice of appeal within 10 days after receipt of such action by the full Commission, appeal to the senior resident judge of the superior court in the county in which the cause of action arose or in which the claimant resides; and upon such appeal said judge shall consider the matter and determine in his discretion the reasonableness of said agreement or fix the fee and direct an order to the Commission following his determination therein.

N.C. Gen. Stat. § 97-90(c).

In *Creel v. Town of Dover*, 126 N.C. App. 547, 486 S.E.2d 478 (1997), we held that the plaintiff's failure to comply with the appeal procedures set forth in N.C. Gen. Stat. § 97-90(c) required dismissal of his argument that the Commission failed to properly address the issue of fees as required by N.C. Gen. Stat. § 97-90. *Id.* at 552, 486 S.E.2d at 480. We rejected the plaintiff's argument that because the Commission failed to address the issue of fees, he was not required to comply with the statutory appeal procedures. *Id.* We noted:

Had [plaintiff] or his attorney brought the matter to the superior court in the manner set out in G.S. § 97-90, the Commission would thereby have been compelled to explain its failure to award counsel fees. Perhaps, as plaintiff claims, the Commission neglected to do so because of mere oversight. Whatever the explanation for the Commission's omission, however, neither plaintiff nor his attorney complied with G.S. § 97-90.

*Id.*

Similarly, in *Davis v. Trus Joist MacMillan*, 148 N.C. App. 248, 558 S.E.2d 210, *disc. review denied*, 355 N.C. 490, 563 S.E.2d 564 (2002), we recently observed that N.C. Gen. Stat. § 97-90(c) requires that after the Full Commission renders a decision, the matter "must" be appealed to the senior resident judge of the superior court in the county in which the cause of action arose or in which the plaintiff resides. *Id.* at 255, 558 S.E.2d at 215. Thus, where the plaintiff failed to appeal the dispute over attorney's fees according to the procedures set out in section 97-90(c), we determined that "we are without jurisdiction to hear the issue and must dismiss the appeal." *Id.*

In the present case, assuming that plaintiff's attorney duly provided a copy of the agreement to the hearing officer or Commission

prior to the conclusion of the hearing,[2] the record fails to establish that plaintiff followed the procedures outlined in the statute for appealing the Commission's failure to approve the agreement. The record contains no indication that plaintiff appealed this matter to the senior resident judge of the superior court in the county in which the cause of action arose or in which plaintiff resides. Accordingly, we do not have jurisdiction over this issue.

For the reasons stated herein, the opinion and award of the Full Commission is affirmed.

Affirmed.

Judges WYNN and THOMAS concur.

2. The record on appeal fails to contain plaintiff's fee agreement, nor any indication (other than plaintiff's assertion) that it was duly filed prior to the conclusion of the hearing in accordance with N.C. Gen. Stat. § 97-90(c). "Appellate review is based 'solely upon the record on appeal,' N.C.R. App. P. 9(a); it is the duty of the appellants to see that the record is complete." *Collins v. Talley,* 146 N.C. App. 600, 603, 553 S.E.2d 101, 102 (2001).