LETESHIA CROSS, Employee-Plaintiff v. FALK INTEGRATED TECHNOLOGIES, INC., Employer-Defendant, AND AMERICAN HOME ASSURANCE c/o AIGCS, Carrier-Defendant

No. COA07-565

(Filed 6 May 2008)

**1. Workers' Compensation— return to school after release to work—not supportive of disability**

The choice of a workers' compensation plaintiff to return to school after her release for work did not support her contention of disability, despite her argument that pursuit of an engineering degree was a reasonable effort to find employment. Educational pursuits have been approved as proper vocational rehabilitation after disability has been established, but not for purposes of establishing disability. Moreover, defendants offered vocational assistance and identified several available positions that were suitable for plaintiff without further education.

**2. Workers' Compensation— maximum medical improvement—evidence**

The Industrial Commission did not err by finding that plaintiff had reached maximum medical improvement on a certain date and that she was not entitled to total disability benefits after that date.

**3. Workers' Compensation— benefits denied—uncontradicted evidence of impairment**

The Industrial Commission's denial of workers' compensation benefits for a permanent brain injury under N.C.G.S. § 97-31(24) was not supported by the findings of fact where there was uncontradicted medical evidence of post-concussion syndrome with a two percent permanent partial impairment rating, and the Commission made no findings to support its conclusion denying compensation for a permanent brain injury.

**4. Workers' Compensation— payments made but not due—deduction from permanent award—remanded for specific findings**

The Industrial Commission was within its authority in a workers' compensation case in specifying that amounts were not "due and payable" when made and that those payments be deducted from plaintiff's award of permanent partial impairment

CROSS v. FALK INTEGRATED TECHS., INC.

[190 N.C. App. 274 (2008)]

benefits. However, the Commission did not specify the exact amount of the credit and the matter was remanded for appropriate findings.

**5. Workers' Compensation— third-party settlement—finding not supported by evidence—not prejudicial**

While the evidence did not support an Industrial Commission finding regarding plaintiff's third-party settlement in a workers' compensation case, the finding was not crucial to the determination of plaintiff's entitlement to benefits and the same result would have been obtained without the questioned finding. There was no prejudice.

Appeal by Plaintiff from an Opinion and Award entered 2 February 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 December 2007.

*Anne R. Harris for Plaintiff-Appellant.*

*Robinson & Lawing, L.L.P., by Jolinda J. Babcock, for Defendants-Appellants.*

STEPHENS, Judge.

Plaintiff Leteshia Cross was employed as an office assistant at Fox Run apartment complex when she suffered multiple injuries in a work-related motor vehicle accident on 6 June 2001. Defendants Falk Integrated Technologies, Inc., the owners of the apartment complex, and their insurance carrier, American Home Assurance c/o AIGCS, accepted the claim as compensable via an I.C. Form 60 and paid Plaintiff temporary total disability benefits from the date of the accident through 12 May 2004. Although Defendants filed I.C. Form 24 applications on 12 September 2002 and 12 December 2003 to terminate Plaintiff's compensation, both applications were denied. Defendants appealed the second denial, and the case came on for hearing before Deputy Commissioner Chrystal Redding Stanback on 24 January 2005. The Deputy Commissioner filed an Opinion and Award on 14 March 2006, finding that Plaintiff was entitled to receive certain benefits. Both parties appealed to the Full Commission. In an Opinion and Award filed 2 February 2007, the Full Commission reversed the Deputy Commissioner's decision in part, determining that Plaintiff was not owed disability benefits after 19 March 2002. From the Opinion and Award of the Full Commission, Plaintiff appeals.

## I. Background

Plaintiff began undergraduate studies at the University of North Carolina at Greensboro in the Fall of 1999, where she completed one year before taking a semester off to give birth to her child. She returned to school at North Carolina A & T in January 2001 and, after completing her spring semester, started working for Defendants during her summer break. Plaintiff testified that it had been her intention to continue working full-time for Defendants after the summer ended while also attending college.

While running an office errand on 6 June 2001, Plaintiff, who was 19 at the time, pulled out of a parking lot and was hit by another vehicle. Plaintiff was taken to Moses Cone Memorial Hospital and treated for a fractured left femur, a fractured pelvis, and head trauma. Dr. Daniel F. Murphy, an orthopedist, performed surgery to stabilize the left femur fracture. A CT scan of Plaintiff's head revealed a small area of hemorrhage in the left frontal lobe of her brain. Plaintiff was released from the hospital with crutches on 12 June 2001, and was instructed not to place any weight on her left leg for the following weeks.

During Plaintiff's post-surgical care, Defendants provided medical case management through Sheila Ward, R.N., BSN, CCM. Ms. Ward testified that Plaintiff indicated she did not intend to return to work after her recovery and, instead, would attend school full-time. The Full Commission found Ms. Ward's testimony to be credible.

Plaintiff also experienced blurred vision and was treated by ophthalmologist Dr. Kathryn Hecker in July of 2001. Dr. Hecker advised Plaintiff to perform eye exercises and watch for improvement. No additional care was recommended or sought, and Plaintiff did not experience any long-term vision difficulties. Plaintiff continued treatment for her leg with Dr. Murphy. On 19 December 2001, Dr. Murphy performed additional surgery to remove the pin that had been inserted in Plaintiff's femur immediately after the accident.

Plaintiff attempted to return to school at North Carolina A & T as a full-time student in the Fall of 2001, but withdrew halfway through the semester because it was too difficult to maintain her class schedule while on crutches and attending physical therapy three times a week. In January 2002, Plaintiff enrolled as a student at Guilford Technical Community College. During this time, Plaintiff continued to receive temporary total disability benefits.

CROSS v. FALK INTEGRATED TECHS., INC.

[190 N.C. App. 274 (2008)]

Plaintiff also experienced memory problems and was seen by Dr. Jeffrey Schmidt at Guilford Neurologic Associates on 12 March 2002. Dr. Schmidt recommended testing, but noted that Plaintiff could work with no restrictions. Neuropsychological testing was performed by Dr. Michael F. Zelson, a clinical neuropsychologist, on 1 April and 4 April 2002. Dr. Zelson "did not identify any neuropsychological impairment relative to the normative population." Although Dr. Zelson opined that, compared to Plaintiff's pre-injury level of functioning, Plaintiff may have a mild deficit in her ability to learn and consolidate new information, he did not anticipate that she would have any limitations in employment of a non-professional type.

Thereafter, Dr. Schmidt released Plaintiff from care on 31 May 2002, noting that her neurological examination had been unremarkable. He assigned a permanent partial impairment of two percent relative to her post concussion syndrome and again imposed no work restrictions.

Plaintiff was released from Dr. Murphy's care on 19 March 2002. At that time, he noted, "[a]lthough she has not gotten back to running she is pretty much back to all other activities. Residual weakness in the left leg is definitely improving including the instability feeling around the knee." Plaintiff was found to be at maximum medical improvement with a 15 percent permanent partial impairment rating to her left lower leg. No work restrictions were imposed and Dr. Murphy testified that, from an orthopedic standpoint, he felt Plaintiff could have worked as an administrative assistant starting 19 March 2002.

Although Plaintiff was released with no work restrictions in the Spring of 2002, and testified that she was physically and mentally capable of performing an office assistant job during this time, she made no attempt to locate work or to contact her former employer to return to work. Thus, in September 2002, Defendants filed an I.C. Form 24 application to terminate compensation. In her response, Plaintiff claimed that she had not been released to unrestricted work, contrary to the medical reports. The Form 24 application was subsequently denied. In its 2 February 2007 decision, the Full Commission determined that the 10 September 2002 Form 24 application should have been allowed and that Defendants should have been able to terminate disability compensation as it was not owed after 19 March 2002.

On 13 August 2003, Plaintiff returned to Dr. Murphy, reporting a several-month history of knee pain following try-outs for the North Carolina A & T bowling team. Dr. Murphy ordered an MRI of Plaintiff's left knee which revealed a focal chondral abnormality. Surgery was performed on 15 December 2003 to remove chondral loose bodies. Defendants continued paying total disability benefits throughout this time period.

In August of 2003, Defendants hired a vocational case manager, Mr. Scott Perry, BS, CDMS, ORP. Mr. Perry met with Plaintiff and her attorney on 19 August 2003 to prepare a vocational assessment. During the meeting, Plaintiff advised that she had no time to work because she was caring for her infant son and attending school full-time. Although Mr. Perry identified several job leads for Plaintiff, she did not follow up on any of them. She did, however, apply for an internship during the Fall 2003 semester and testified that she felt capable of going to school full-time while participating in an internship.

Defendants filed a second I.C. Form 24 application to terminate benefits in December of 2003, but the application was again denied. Mr. Perry then met with Plaintiff and her attorney in February 2004. At that meeting, Plaintiff reiterated that she did "not see how a full or part-time job could fit into her schedule." It was Mr. Perry's understanding that Plaintiff was not willing to rearrange her school schedule to accommodate a job.

In May 2004, Plaintiff obtained an internship in Michigan earning $3,500 per month, and Defendants thus terminated Plaintiff's ongoing compensation. Upon her return to North Carolina, Plaintiff began an internship at American Express in September 2004 earning $15 per hour and working 20 hours per week. She also maintained a full-time class schedule.

After graduating with a degree in Industrial Engineering in December 2004, Plaintiff increased her work schedule at American Express to 35 hours per week, earing $17 an hour. As of the date of the hearing, Plaintiff was working full-time and attending the masters program at North Carolina A & T, with plans to transfer to an MBA program at UNC Greensboro.

## II. Disability

[1] By her first argument, Plaintiff asserts that the Full Commission erred in concluding that she was no longer disabled from her compensable injury after 19 March 2002.

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005). The burden is on the employee to establish both the existence and the degree of disability. *Hall v. Thomason Chevrolet, Inc.*, 263 N.C. 569, 139 S.E.2d 857 (1965). The employee may prove disability in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).

After an employee has established disability, the burden shifts to the employer "to show not only that suitable jobs are available, but also that the [employee] is capable of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). An employer can overcome the presumption of disability by providing evidence that:

> (1) suitable jobs are available for the employee; (2) that the employee is capable of getting said job taking into account the employee's physical and vocational limitations; (3) and that the job would enable employee to earn some wages.

*Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 209, 472 S.E.2d 382, 388, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). When suitable employment is not available, the employer may provide vocational rehabilitation services to assist the employee in finding work that is suitable.

In this case, Plaintiff contends that she met her burden of establishing disability under the second prong of *Russell* by producing evi-

dence that she was capable of some work, but that, after a reasonable effort on her part, she was unsuccessful in her effort to obtain suitable employment. Citing *Russos v. Wheaton Indus.*, 145 N.C. App. 164, 551 S.E.2d 456 (2001), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 135 (2002), and *Foster v. U.S. Airways, Inc.*, 149 N.C. App. 913, 563 S.E.2d 235, *disc. review denied*, 356 N.C. 299, 570 S.E.2d 505 (2002), Plaintiff asserts that her "reasonable effort to obtain employment" was satisfied by her pursuit of her engineering degree. Plaintiff's argument is misplaced.

In *Russos*, the Court concluded that the plaintiff was entitled to paralegal training as a type of vocational rehabilitation service. Since the parties there had entered into a Form 21 agreement, a presumption of disability had attached in favor of the plaintiff and the burden of proof accordingly shifted to the defendant to overcome that presumption. The Court held that the defendant had not met its burden of overcoming the presumption of disability and, thus, the defendant was required to pay the plaintiff's temporary total disability benefits while the plaintiff completed paralegal training, as the paralegal training "was a reasonable attempt at rehabilitation given the totality of the circumstances." *Russos*, 145 N.C. App. at 166, 551 S.E.2d at 458. Those circumstances included the uncontested fact that, unlike the case *sub judice*, the plaintiff in *Russos* was released to work with restrictions on lifting, pushing, pulling, and reaching activities which her employer could not accommodate.

In *Foster*, as in *Russos*, the parties had entered into a Form 21 agreement and the defendant did not carry its burden of overcoming the presumption of disability that had attached in favor of the plaintiff. The Court stated:

> The evidence in this case shows that plaintiff was not qualified to earn the same wages in another field that she received as a flight attendant. The evidence shows that "CRA representatives had stated that it would be impossible for them to place plaintiff in a job that paid the same as her old job and thereafter conducted a job search for inappropriate lower paying jobs." The evidence also shows that the DVR representative stated "that plaintiff did not have the educational background or job skills to transfer into a job that was going to pay her anywhere near the $35,000 per year she had earned at USAir." In addition, the evidence shows that receiving a Social Work degree would serve as the foundation for plaintiff to qualify for a higher wage in another field.

*Foster,* 149 N.C. App. at 924, 563 S.E.2d at 242. Further, as in *Russos,* the plaintiff in *Foster* was released to work with restrictions that precluded her return to her pre-injury job as a flight attendant. Thus, the Court held that the plaintiff was entitled to total disability benefits and that her pursuit of a community college degree was a proper method of vocational rehabilitation pursuant to N.C. Gen. Stat. § 97-25.

Unlike in *Russos* and *Foster* where a Form 21 agreement established a presumption of disability in favor of the plaintiffs, in this case the parties did not enter into a Form 21 agreement[1] and Plaintiff thus was required to offer sufficient evidence to establish disability. The evidence established, however, that at the time of her accident, Plaintiff was working full-time as an office assistant earning $8 per hour, having completed three semesters of college. After her release from the hospital, Plaintiff repeatedly told Ms. Ward that she did not intend to work following her recovery and, instead, planned to attend school full-time. Importantly, Plaintiff was released to work with no work restrictions by 19 March 2002 and, although she felt "she was physically and mentally capable of working and returning to a job as an office assistant," she chose to return to school instead. Such evidence does not support Plaintiff's contention that she was disabled after 19 March 2002 and is sufficient evidence to support the Commission's findings that "[P]laintiff was fully capable of earning the same wages she earned at the time of the accident by March 19, 2002," and that "[w]hile [P]laintiff could have earned the same wages that she earned at the time of the accident, she instead chose to attend school full-time."

Furthermore, neither the defendant in *Russos* nor the defendant in *Foster* was able to overcome the presumption of disability created by the Form 21 agreement by showing that suitable jobs were available for the plaintiffs. In this case, however, even had Plaintiff proven disability, Defendants offered vocational assistance to Plaintiff and

identified several available positions that were suitable for [P]laintiff, including jobs as a leasing agent at an apartment complex, receptionist, office assistant, customer service representative, collections agent, medical records coordinator, and data entry clerk. These jobs paid between $8.00 and $10.00 per hour,

---

1. No presumption of disability is created by a Form 60 agreement. *Sims v. Charmes/Arby's Roast Beef,* 142 N.C. App. 154, 542 S.E.2d 277, *disc. review denied,* 353 N.C. 729, 550 S.E.2d 782 (2001).

and did not require [P]laintiff to have obtained a college education. [P]laintiff failed to apply for any of the jobs.

Finally, while Plaintiff attempts to offer her educational pursuits as evidence of disability under the second prong of *Russell*, the Court in both *Russos* and *Foster* only approved the plaintiffs' educational pursuits as proper methods of vocational rehabilitation after disability had been established, and did not consider such evidence for purposes of establishing disability. Accordingly, as Plaintiff failed to offer sufficient evidence to establish disability, Plaintiff's first argument is overruled.

### III. Maximum Medical Improvement

[2] Plaintiff also argues that because she was not at maximum medical improvement with regard to her leg injury on 19 March 2002, the Commission erred in finding that Plaintiff's disability ended on 19 March 2002 and that she was, therefore, not entitled to receive temporary total disability benefits after that date.

"Disability" is defined by a diminished capacity to earn wages, not by physical impairment. N.C. Gen. Stat. § 97-2(9). "Maximum medical improvement" is the point at which an injury has stabilized. *Carpenter v. Indus. Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985). While an employee may seek a determination of her entitlement to permanent disability benefits under N.C. Gen. Stat. §§ 97-29 or 97-30, or scheduled benefits under N.C. Gen. Stat. § 97-31 only after reaching maximum medical improvement, *Effingham v. Kroger Co.*, 149 N.C. App. 105, 561 S.E.2d 287 (2002), temporary disability benefits may be terminated before an employee reaches maximum medical improvement if that employee is capable of earning the same wages as prior to injury, and thus, unable to prove disability.

Here, as discussed above, Plaintiff failed to prove she was disabled after 19 March 2002. On that date, Plaintiff was released from care for her left leg with a 15 percent permanent partial impairment rating and no work restrictions. According to her treating physician, Plaintiff was fully capable of returning to her job as an office assistant. Furthermore, Plaintiff herself testified that she was "physically and mentally capable of working and returning to a job as an office assistant" after 19 March 2002. Although Plaintiff returned to Dr. Murphy a year and a half later, complaining of knee pain following bowling activities at school, and underwent further surgery on 15 December 2003, Plaintiff offered no evidence that she was not capa-

ble of earning the same wages after 19 March 2002 that she was earning prior to her accident.[2] As a finding of maximum medical improvement is not necessary to terminate temporary disability benefits, and since Plaintiff failed to establish disability after 19 March 2002, the assignments of error on which this argument is based are overruled.

### IV. Permanent Disability

[3] Plaintiff next assigns error to the Commission's conclusion that she was not entitled to benefits for a two percent permanent disability rating to her head. "In case of the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation not to exceed twenty thousand dollars ($20,000)." N.C. Gen. Stat. § 97-31(24) (2005); *see, e.g., Russell v. Lab. Corp. of Am.,* 151 N.C. App. 63, 564 S.E.2d 634, *disc. review denied,* 356 N.C. 304, 570 S.E.2d 111 (2002) (considering the brain an important internal organ for purposes of compensation under N.C. Gen. Stat. § 97-31(24)). "[T]he Commission has discretion as to whether an award under N.C. Gen. Stat. § 97-31(24) is warranted, and its decision will not be overturned on appeal unless it is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Russell,* 151 N.C. App. at 67, 564 S.E.2d at 637 (quotation marks and citations omitted).

In *Russell,*

the Commission made relevant findings of fact that on the date of the accident, 29 May 1996, x-rays, a CT head scan, and brain MRI and EEG tests were performed and all results indicated plaintiff had normal brain function; that an additional MRI was performed in October 1996 which indicated plaintiff had normal brain function; and that in June 1999 plaintiff underwent an independent medical examination wherein the results of her latest MRI were confirmed to be normal, her mental testing status and speech function were both normal, and the doctor observed that plaintiff was very physically active and had reached maximum medical improvement. The Commission found, in sum, that "[a]ll physical examinations and testing, such as the MRI's of the brain, show no physical damage to the brain." The Commission also made findings of fact pertaining to plaintiff's physically active lifestyle, her

---

2. Plaintiff was awarded temporary total disability benefits for the four weeks following her 15 December 2003 surgery, and neither party appealed this award.

enrollment in college, and her articulate and alert demeanor at the hearing.

*Id.* "In light of these [uncontested] findings, [the Court could not] conclude that the decision to deny compensation for a permanent brain injury under N.C. Gen. Stat. § 97-31(24) was wholly arbitrary or manifestly unsupported by reason, though there may have been evidence to the contrary." *Id.*

Unlike in *Russell*, the Commission in this case made no findings of fact to support its conclusion to deny Plaintiff compensation for a permanent brain injury under N.C. Gen. Stat. § 97-31(24). The Commission found that "[P]laintiff returned to Dr. Schmidt on May 31, 2002, at which time he released her from his care, imposing a two percent (2%) permanent partial disability rating relative to her post-concussion syndrome." This finding of fact does not support, and in fact tends to contradict, the Commission's conclusion that "[P]laintiff has also requested compensation for a two percent (2%) rating to the head, which the Full Commission finds to be unsupported by the evidence of record and is, thus, denied. N.C. Gen. Stat. § 97-31."

Plaintiff's medical records from her treatment by Dr. Jeffrey J. Schmidt were entered into evidence. The notation from her 12 March 2002 visit stated:

[A] report of a CT scan of [Plaintiff's] head immediately after [her car accident] indicates a small left frontal lobe hemorrhage . . . .

. . . .

[Plaintiff] did not attend summer classes following her accident . . . . Since returning to classes this winter, she has had significant problems with her memory and other cognitive difficulties and had to drop her calculus class. She seems to have some element of both retrograde and antegrade memory problems and has difficulty integrating the material. . . . She finds she has to "write everything down[.]" She finds herself telling people things over and over. She notes her spelling has suffered. She also reports blurred vision when she has to read quite a bit . . . . She is also experiencing headaches . . . .

. . . .

My impression is that Ms. Cross has a history of concussion sustained in a motor vehicle accident which occurred on 06/06/2001. She had a documented small left frontal lobe hemorrhage un-

doubtedly relating to her concussion. She is experiencing sub-jective cognitive difficulties currently interfering quite a bit with her school work although she is able to function quite well on a day to day basis.

Additionally, the notation from her 31 May 2002 visit stated:

The patient had been seen by Dr. Michael Zelson at the Moses Cone Outpatient Rehab. Center. She underwent thorough neu-ropsychological evaluation in early April, and overall she was found to be able to function well in most situations. "Compared to her estimated pre injury level of functioning, however, she did exhibit a mild though clinically significant decrement in her abil-ity to learn and consolidate new information into memory." . . .

. . . .

[H]er headaches have eased off quite a bit. . . . [S]he does con-tinue to have some trouble retaining certain material. . . .

. . . .

Ms. Cross has a history of post concussion syndrome with mild traumatic brain injury, . . . The prognosis for improvement from her cognitive problems is quite good but there is some possibility that she may never completely recover. At this point, I would like to release her from routine neurologic follow up and would apply a rating of permanent partial impairment of 2% relative to her post concussion syndrome. . . .

Thus, unlike in *Russell* where a CT scan performed on the day of the accident indicated that the injured employee had normal brain func-tion, in this case the CT scan performed the day of the accident indi-cated that Plaintiff had "a small left frontal lobe hemorrhage[.]" Furthermore, unlike in *Russell* where the injured employee's mental testing status was found to be normal, here, "[c]ompared to [Plaintiff's] estimated pre injury level of functioning . . . she did exhibit a mild though clinically significant decrement in her ability to learn and consolidate new information into memory." Consequently, Dr. Schmidt assigned a two percent permanent partial impairment rating for the post-concussion syndrome Plaintiff sustained. In light of this uncontradicted evidence, we conclude that the Commission's conclusion of law denying Plaintiff's claim for benefits under N.C. Gen. Stat. § 97-31(24) is unsupported by its findings of fact.

Accordingly, we remand this matter to the Industrial Commission for appropriate findings of fact and conclusions of law as to whether Plaintiff is entitled to benefits under N.C. Gen. Stat. § 97-31(24).

V. Credit

[4] Plaintiff next contends the Commission erred in awarding Defendants a credit for benefits paid after 19 March 2002, and in applying said credit against Plaintiff's permanent partial impairment rating.

"The decision of whether to grant a credit is within the sound discretion of the Commission." *Shockley v. Cairn Studios, Ltd.*, 149 N.C. App. 961, 966, 563 S.E.2d 207, 211 (2002), *disc. review denied*, 356 N.C. 678, 577 S.E.2d 888 (2003). As such, the decision by the Commission to grant or deny a credit to the employer for payments previously made will be reversed only for an abuse of discretion. *Shockley*, 149 N.C. App. 961, 563 S.E.2d 207.

> Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation.

N.C. Gen. Stat. § 97-42 (2005). The analysis of whether an employer is entitled to a credit under N.C. Gen. Stat. § 97-42 is limited to a determination of whether the payments for which the employer seeks credit were "due and payable" when made. *Foster v. Western-Electric Co.*, 320 N.C. 113, 357 S.E.2d 670 (1987); *Moretz v. Richards & Assocs., Inc.*, 316 N.C. 539, 342 S.E.2d 844 (1986). "Payments are due and payable under section 97-42 when the employer has accepted the plaintiff's injury as compensable and initiated payment of benefits." *Thomas v. B.F. Goodrich*, 144 N.C. App. 312, 318, 550 S.E.2d 193, 197, *disc. review denied*, 354 N.C. 228, 555 S.E.2d 276 (2001).

The record reflects that Defendant considered Plaintiff's claim to be compensable and filed a Form 60 Employer's Admission of Employee's Right to Compensation on 28 June 2001. Defendant commenced disability payments retroactive to the date of Plaintiff's accident. On 12 September 2002, Defendants filed a Form 24 Application to Terminate or Suspend Payment of Compensation in which Defendants maintained that Plaintiff was "not owed temporary total disability benefits after her releases to work, which occurred no

CROSS v. FALK INTEGRATED TECHS., INC.

[190 N.C. App. 274 (2008)]

later than March 19, 2002." Although Defendant's application was denied by Special Deputy Commissioner Elizabeth M. "Lacy" Maddox on 31 January 2003, the Full Commission found that

> [D]efendants filed a Form 24 application on September [12], 2002. Contrary to her testimony at the hearing before the Deputy Commissioner, [P]laintiff claimed in the response to the Form 24 application that she had not been released to full duty work. It is clear from the record that by September 2002, [P]laintiff was aware that she had been released to work with no restrictions. Thus, the Full Commission finds that Form 24 application to terminate benefits, filed on September [12], 2002, was improvidently denied by Special Deputy Order of January 31, 2003.

Accordingly, Defendants accepted Plaintiff's injury as disabling only until 19 March 2002 and denied Plaintiff's claim after that point. Inasmuch as the Full Commission found that Defendant's Form 24 application to terminate benefits was improvidently denied, and Plaintiff has failed to establish disability beyond 19 March 2002, payments made after 19 March 2002 were not "due and payable." Thus, the Commission was within its statutory authority to order that such payments be deducted from Plaintiff's award of permanent partial impairment benefits.

However, as Plaintiff correctly asserts, "[t]he Commission's Opinion and Award does not specify the exact amount of the credit, or the exact dates of the payments which were allegedly subject to the credit." Although the Full Commission concluded that "[D]efendants are entitled to a credit for all temporary total disability benefits paid to the [P]laintiff after March 19, 2002[,]" the Full Commission also concluded, and neither party assigned as error, that Plaintiff was "entitled to temporary total disability benefits . . . for the four weeks following her December 15, 2003 surgery[.]" Moreover, the amount of the credit must be calculated in light of the Commission's further determination of whether Plaintiff is entitled to benefits for the permanent partial impairment rating to Plaintiff's brain, as discussed above. Accordingly, we remand to the Full Commission for findings of fact and conclusions of law consistent with this opinion on the amount of credit due to Defendants.

## VI. Third-party Claim

[5] By her final assignment of error, Plaintiff contends the Commission erred in finding as fact that Plaintiff was paid $25,000 to

resolve her claim against the driver of the other vehicle involved in the accident.

Plaintiff filed a third-party negligence action against the driver of the vehicle which hit her. Defendants asserted a lien upon Plaintiff's third-party recovery pursuant to N.C. Gen. Stat. § 97-10.2. Plaintiff made an Application to Extinguish Workers' Compensation Lien and, upon review of the application, Judge Michael E. Helms distributed the total amount of the $37,501.00 settlement as follows: (1) $15,000 to Defendants in full satisfaction of the workers' compensation lien, (2) $9,375.25 to Plaintiff's counsel as an attorney's fee for the third-party claim, and (3) $13,125.75 to Plaintiff.

The Commission found as fact that Plaintiff "was paid $25,000[] to resolve the [third-party] claim." However, even if the Commission considered the attorney's fees paid out of Plaintiff's recovery, Plaintiff would have been deemed to have received $22,501, $2,499 less than the Commission's calculation of Plaintiff's recovery. Thus, the evidence does not support the Commission's challenged finding of fact. However, this finding was not crucial to the determination of Plaintiff's entitlement to benefits. Thus, without the questioned finding of fact, the same result would have been obtained. We therefore consider any error in the finding to be nonprejudicial. *Atwater v. Radio Station WJRI, Inc.*, 28 N.C. App. 397, 221 S.E.2d 88 (1976). Accordingly, Plaintiff's assignment of error is overruled.

For the above-stated reasons, we

AFFIRM IN PART, AND REVERSE AND REMAND WITH IN-STRUCTIONS IN PART.

Chief Judge MARTIN and Judge McGEE concur.