***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** MOTION TO COMPEL MEDICAL CARE AND SANCTIONS *Page 2 
Plaintiff moved to compel Southland Gaming Corp. and AIG Claim Services (hereinafter referred as "Defendants") to authorize further medical treatment by Dr. Robert Mark Rodger, Plaintiff's treating orthopaedist, upon the recommendation of Dr. Sunil Kumar Arora, Plaintiff's treating pain management physician, as well as for sanctions against Defendants for willful failure and/or refusal to previously authorize said treatment. After consideration of the written and the oral arguments of the parties and subsequent correspondence from the parties indicating that such medical treatment is being arranged, the Full Commission orders that Plaintiff's medical treatment with Dr. Rodger be expedited.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of Plaintiff's April 13, 1999 work injury.
4. An employment relationship existed between the parties at the time of Plaintiff's April 13, 1999 work injury. *Page 3 
5. AIG Claim Services (hereinafter referred to as "Defendant-Carrier") provided workers' compensation insurance coverage to Southland Gaming Corp. (hereinafter referred to as "Defendant-Employer") at all times relevant to these proceedings.
6. Defendants accepted Plaintiff's April 13, 1999 work injury as compensable.
7. On April 13, 1999, Plaintiff was acting within the course and scope of his employment with Defendant-Employer. On that day, Plaintiff was a passenger in a motor vehicle when another motor vehicle struck the motor vehicle in which Plaintiff was a passenger. A short time later that same day, a third vehicle struck the vehicle in which Plaintiff was a passenger. Plaintiff received injuries to his back requiring surgery to stabilize it, and he continues to be treated for said injuries to this date. Plaintiff has yet to return to work following the April 13, 1999 work injury.
8. Plaintiff recovered a sum of $100,000.00 from Nationwide Insurance Company and $50,000.00 from Geico Insurance Company, the liability carriers of the vehicles that collided with the vehicle in which Plaintiff was a passenger. The North Carolina Industrial Commission approved said sum, totaled in the amount of $150,000.00, and distributed it as follows: $55,000.00 to AIG Claim Services, Defendant-Employer's workers' compensation insurance carrier, in satisfaction of its lien on the recovery; $47,500.00 to Plaintiff's attorney for his fee; and $47,390.57 to Plaintiff. The North Carolina Industrial Commission entered this Order for distribution on May 28, 2002.
9. Plaintiff's average weekly wage at all times relevant to these proceedings was $626.92, yielding a compensation rate of $417.97.
10. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits: *Page 4 
 a. Stipulated Exhibit one (1) — Executed Pre-trial Agreement;
 b. Stipulated Exhibit two (2) — Accident report from the April 13, 1999 motor vehicle accident;
 c. Stipulated Exhibit three (3) — North Carolina Industrial Commission forms and filings;
 d. Stipulated Exhibit four (4) — Plaintiff's discovery responses;
 e. Stipulated Exhibit five (5) — Plaintiff's medical records;
 f. Stipulated Exhibit six (6) — Plaintiff's vocational rehabilitation reports, including the report of Mr. Zach Luther Zuehlke.
 *********** ISSUE
The issue for determination is whether Plaintiff is permanently and totally disabled?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 43 years old, with a date of birth of November 7, 1965. Plaintiff completed the 10th grade in Indiana before dropping out of school in the 11th grade. Plaintiff currently resides in Pender County, North Carolina.
2. Defendant-Employer is an amusement game company. Plaintiff worked with Defendant-Employer as a technician, starting in 1991. Plaintiff's job duties included heavy lifting of pool tables, jukeboxes, and video game machines, as well as setting up the various *Page 5 
machines, and performing troubleshooting, inspection, and maintenance of the machines. In addition, Plaintiff also maintained transaction logs.
3. Plaintiff's work history before he began employment with Defendant-Employer included work primarily consisting of physical labor, including employment as a meat processor and installing carpets. Plaintiff has no specialized training or job skills which would be transferrable to other types of non-physical employment. Further, Plaintiff never completed his general equivalency diploma (GED).
4. As a result of Plaintiff's June 13, 1999 work injury, which Defendants accepted as compensable, he underwent lumbar fusion surgery with instrumentation at the L4-L5 level of the spine on July 31, 2000 with Dr. Robert Mark Rodger. Dr. Rodger eventually assigned Plaintiff permanent restrictions of no lifting greater than 20 pounds and position changes as needed in order to relieve Plaintiff's symptoms of pain and discomfort. Dr. Rodger also assigned a 30 percent permanent partial disability rating to Plaintiff's back. Dr. Rodger last saw Plaintiff on February 4, 2004, found him to be at maximum medical improvement, and referred Plaintiff to pain management.
5. Plaintiff continues to receive pain management treatment with Dr. Sunil Kumar Arora every three (3) months. Further, Dr. Arora maintains Plaintiff on daily fentanyl patch and hydrocodone therapy. Dr. Arora concluded that Plaintiff's fusion surgery failed, in that the screws from the fusion are breaking through the inner wall of the pedicle in Plaintiff's lumbar spine. Moreover, Dr. Arora opined that there is a "high possibility that the Plaintiff will start having shooting pain in the future," in addition to the current back pain and numbness in both legs of which he currently suffers. *Page 6 
6. Defendants initiated vocational rehabilitation with Plaintiff on March 27, 2001. Plaintiff's vocational rehabilitation professional noted that Plaintiff's educational level and the limited job market in the geographic area in which he resides caused difficulties in finding suitable employment within his physical restrictions. During the vocational rehabilitation process, Plaintiff's vocational rehabilitation professional suggested that he might enhance his employment prospects if he obtained his GED. Although Plaintiff made efforts to obtain his GED, he had difficulty with the coursework associated with successful completion of the GED program and never obtained it, primarily due to Plaintiff's low-average intellectual capacity. Plaintiff scored 84 on the Kaufman IQ test, which is in the "low average" range of intelligence.
7. Over the next 23 months of vocational rehabilitation, Plaintiff applied for numerous jobs, none of which he obtained. While Plaintiff did miss some meetings with his vocational rehabilitation professional, the Full Commission finds, based upon the greater weight of the evidence, that he made a good faith effort and substantially complied with vocational rehabilitation, including his attempts to obtain a GED. Further, Defendants never moved to compel Plaintiff's compliance with vocational rehabilitation. Defendants terminated vocational rehabilitation on February 28, 2003.
8. Plaintiff made no further attempts to apply for any jobs within the two (2) years prior to the hearing before the Deputy Commissioner. As of the hearing before the Full Commission, Plaintiff could not stand, walk, or sit for extended periods of time. Further, Plaintiff now regularly has pain shooting into his legs.
9. Dr. Rodger, a board-certified orthopaedic surgeon, testified that Plaintiff will likely continue to have back and leg pain, will require continued pain management, and possibly more surgery. Dr. Rodger further opined that Plaintiff is permanently and totally disabled, *Page 7 
considering that he attempted for two (2) years to find a job within his restrictions, without success. However, Dr. Rodger acknowledged that if Plaintiff were to be able to obtain his GED and receive vocational retraining, he would improve his chances of obtaining employment.
10. Dr. Arora, a board-certified anesthesiologist with a specialty in pain management, testified that he did not see any evidence of depression, drug abuse, or malingering with Plaintiff. Dr. Arora felt that Plaintiff is currently on relatively small amounts of pain medication and can drive, as long as he can stop and stretch at hourly intervals. However, Dr. Arora opined that Plaintiff should not operate machinery under his current narcotic medication regime. Further, Dr. Arora cautioned that any worsening of Plaintiff's condition may require that his pain medications be increased. Ultimately, Dr. Arora concluded that, in his opinion, Plaintiff is permanently and totally disabled from any employment involving physical labor, but that he might be able to do sedentary work if he received retraining.
11. Dr. Luther Dixon Pearsall, Ph.D, a certified rehabilitation professional with significant workers' compensation and Social Security disability experience, administered the Kaufman IQ test to Plaintiff in which obtained a score of 84. Dr. Pearsall testified that it is highly unlikely, barring significant improvement in Plaintiff's condition, that he will return to full-time competitive employment at any level, although Dr. Pearsall did note that obtaining a GED and retraining would improve Plaintiff's chances to return to work.
12. The Full Commission gives great weight to the opinions of Dr. Rodger, Dr. Arora, and Dr. Pearsall concerning Plaintiff's capacity to work. Although Dr. Rodger, Dr. Arora, and Dr. Pearsall all suggested the possibility of Plaintiff improving his chances of obtaining employment within his permanent work restrictions by obtaining a GED, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff made reasonable efforts to *Page 8 
obtain a GED, but remains unable to obtain a GED due to his low-average intellectual capacity. Further, the Full Commission finds, based upon the greater weight of the evidence, that even if Plaintiff were to successfully obtain his GED, any further efforts on his part to obtain gainful employment within his permanent work restrictions would be futile, given his limited education (10th grade), prior work history of only heavy, physical labor, his permanent physical work restrictions, and his progressively deteriorating medical condition, including his continuing complaints of back and leg pain, leg numbness, continued dependence on narcotic pain medications, and eventual need for further surgical intervention. Thus, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is permanently and totally disabled from any employment
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendants on April 13, 1999. N.C. Gen. Stat. § 97-2(6) (2007).
2. In order to prove permanent, total disability, Plaintiff must prove that he is unable to earn the same wages he earned before his April 13, 1999 work injury, either in the same employment or in other employment.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet this burden in one (1) of four (4) ways:
 (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment [citation omitted]; (2) the production of evidence that he is capable of some work, but that he has, after a *Page 9 
reasonable effort . . . been unsuccessful in . . . obtain[ing] employment [citation omitted]; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment [citation omitted]; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury [citation omitted]. Russell v. Lowes Production Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Once Plaintiff satisfies his burden of proving disability, Defendants must prove not only that suitable employment is available, but also that Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations. Kennedy v. DukeUniv. Med. Ctr., 101 N.C. App. 24, 398 S.E. 2d 677 (1990). Defendants may overcome the presumption of disability by providing evidence that: (1) suitable employment is available for Plaintiff; (2) Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations; and (3) the proffered employment would enable Plaintiff to earn some wages. Franklin v. Broyhill FurnitureIndus., 123 N.C. App. 200, 472 S.E. 2d 382, cert. denied, 344 N.C. 629,477 S.E. 2d 39 (1996). If suitable employment is not otherwise available, Defendants may provide vocational rehabilitation services in order to assist Plaintiff in securing suitable employment. Cross v. FalkIntegrated Technologies, Inc., ___ N.C. App. ___, 661 S.E.2d 249 (2008).
4. In this case, Plaintiff proved that he is permanently and totally disabled from any employment by the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, thereby satisfying prong one (1) of Russell. Russell v. Lowes Production Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Dr. Robert Mark Rodger opined that Plaintiff is permanently and totally disabled, considering that he attempted for two (2) years to find a job within his restrictions, *Page 10 
without success. Further, Dr. Sunil Kumar Arora testified that Plaintiff is permanently and totally disabled from any employment involving physical labor, but that he might be able to do sedentary work if he received retraining. Finally, Dr. Luther Dixon Pearsall testified that it is highly unlikely, barring significant improvement in Plaintiff's condition, that he will return to full-time competitive employment at any level, although Dr. Pearsall did note that obtaining a GED and retraining would improve Plaintiff's chances to return to work.
5. Although Dr. Rodger, Dr. Arora, and Dr. Pearsall all acknowledged, to varying degrees, the possibility of Plaintiff obtaining gainful employment within his restrictions should he successfully obtain a GED, Plaintiff also established evidence sufficient to satisfy prong three (3) of Russell by the production of evidence that it would be futile, under the circumstances, for Plaintiff to seek employment due to his limited education (10th grade), his prior work history of only heavy, physical labor, and his permanent physical work restrictions, in combination with Plaintiff's progressively deteriorating medical condition, including his continuing complaints of back and leg pain, leg numbness, continued dependence on narcotic pain medications, and eventual need for further surgical intervention. Further, it would also be futile for Plaintiff to make any further efforts to obtain a GED, given Plaintiff's low-average intellectual capacity. Russell v. Lowes Production Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Despite Plaintiff's relatively young age, Plaintiff is permanently and totally disabled from any employment, given his work history, education (10th grade), low-average intellectual capacity, as well as his progressively deteriorating medical condition, including his continuing complaints of back and leg pain, leg numbness, continued dependence on narcotic pain medications, and eventual need for further surgical intervention. Russell v. Lowes Production Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 11 
7. Plaintiff is entitled to have Defendants pay for medical expenses incurred which are reasonably related to his April 13, 1999 work injury, as such medical treatment is reasonably required to effect a cure, to give relief, and/or to lessen his period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25 (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay Plaintiff compensation for permanent total disability at the rate of $417.97 per week until further Order of the North Carolina Industrial Commission.
2. Defendants shall continue to pay for all reasonably related medical expenses incurred and to be incurred by Plaintiff in the future due to his April 13, 1999 work injury, including, but not limited to treatment provided Dr. Robert Mark Rodger and Dr. Sunil Kumar Arora. Defendants shall pay medical bills according to procedures allowed by the North Carolina Industrial Commission.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct from Plaintiff's compensation every fourth (4th) check and pay the same directly to Plaintiff's counsel.
4. Defendants shall pay the costs of these proceedings. As part of these costs, if not already paid, Defendants shall pay an expert witness fee to each of the following health care providers, in the amount shown or the amount actually billed, whichever is less: $510.00 to Dr. *Page 12 
Rodger; $447.00 to Dr. Arora; $350.00 to Dr. Luther Dixon Pearsall, and; $172.00 to Mr. Zach Leonard Zuehlke.
This the ___ day of January, 2009.
S/__________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/__________________ DANNY LEE McDONALD COMMISSIONER *Page 1