***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. The workers' compensation insurance carrier providing insurance coverage is correctly named, above; or the employer named above is self-insured.
4. Plaintiff's average weekly wage at all times relevant to these proceedings was $689.77.
5. Plaintiff sustained an injury on or about January 10, 2007, with the exact date to be determined by the North Carolina Industrial Commission.
6. Plaintiff sustained a compensable injury by accident arising out of and in the course and in the scope of his employment with Pizzagalli Construction Co. (hereinafter referred to as "Defendant").
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Plaintiff's medical records from:
 i. Lenoir Memorial Hospital, Inc.;
 ii. Sylvia Chiropractic Center;
 iii. Coastal Physical Medicine Rehabilitation Services, Inc.;
 iv. NovaCare Rehabilitation;
 v. Edwin B. Cooper, Jr., M.D., P.A.;
 vi. Center for Scoliosis Spinal Surgery, P.L.L.C.;
 vii. Eastern Radiologists, Inc.; *Page 3 
 viii. Plymouth Primary Care;
 ix. Carolina Case Management Rehabilitation Services, Inc.
 b. Stipulated Exhibit two (2) — Various documents, including:
 i. Plaintiff's recorded statement from January 30, 2007;
 ii. North Carolina Industrial Commission forms and filings;
 iii. Correspondence dated June 20, 2007 from Defendant's counsel to Executive Secretary Tracey H. Weaver;
 iv. Copies of surveillance compact discs and written reports from April 6, 2007 through April 7, 2007, April 20, 2007 through April 21, 2007, and October 12, 2007 through October 13, 2007;
 v. Defendant's policies and procedures concerning drug and alcohol issues;
 vi. Plaintiff's job description;
 vii. Pre-trial Agreement;
 viii. Discovery responses.
 *********** ISSUES
The issues for determination are:
1. Whether Plaintiff continues to be disabled, thereby entitling him to temporary total disability compensation after May 17, 2007?
2. Whether Defendant unilaterally stopped paying Plaintiff's temporary total disability compensation, thereby entitling Plaintiff to a 10 percent penalty on any payments not made in a timely manner? *Page 4 
3. Whether Plaintiff is entitled to ongoing medical treatment in connection with his January 10, 2007 work injury?
4. Whether Plaintiff returned to suitable employment with Defendant on May 17, 2007?
5. Whether Plaintiff constructively refused suitable employment with Defendant subsequent to May 17, 2007?
6. Whether Plaintiff's current medical condition is causally related to his January 10, 2007 work injury?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 50 years old, with a date of birth of January 27, 1959, and holds a community college degree in electronics. Plaintiff's employment history primarily includes work as a machinist and an equipment operator. Plaintiff's job duties with Defendant consisted of performing a daily maintenance check on his earth-mover truck and then operating the truck.
2. On January 10, 2007, Plaintiff suffered a compensable work injury to his left shoulder and lower back while helping laborers carry a heavy roll of felt paper. On January 17, 2007, Plaintiff was again assisting laborers, this time in moving a water pump, when he felt a burning sensation in his left arm and back.
3. On January 19, 2007, Plaintiff presented to the emergency department at Lenoir Memorial Hospital, Inc. complaining of a gradual onset of lower back and left shoulder pain over the past nine (9) days, with no radiation, following an on-the-job lifting/twisting injury. *Page 5 
Plaintiff's neurologic exam was normal, other than a positive straight right leg raise at 90 degrees, and he received a diagnosis of acute lower back pain and a left shoulder strain. Plaintiff remained out of work until January 22, 2007, at which time he returned to work with a 10-pound lifting restriction until January 26, 2007.
4. Plaintiff presented to Dr. Alan David Russakov, a pain management specialist, on March 16, 2007. Plaintiff reported for the first time that he had been experiencing neck pain since the January 10, 2007 work injury. Neurologic and musculoskeletal examinations by Dr. Russakov revealed full range of motion in Plaintiff's extremities. Dr. Russakov diagnosed ongoing neck, left shoulder, and lower back pain without physical findings, advised Plaintiff to begin physical therapy, and authorized him to remain out of work until he completed the course of physical therapy.
5. Plaintiff began physical therapy at NovaCare Rehabilitation on March 19, 2007. Plaintiff's physical therapy notes indicate several inconsistencies, as well as self-limiting behavior in the objective testing portions of the records.
6. On April 4, 2007, Plaintiff attended a follow-up appointment with Dr. Russakov. Dr. Russakov advised Plaintiff that he would not harm himself if he returned to his previous work. In a follow-up appointment on May 3, 2007, Dr. Russakov reviewed and approved a light-duty job description provided by Defendant. Five (5) days later, after an issue over Plaintiff's need for medication, Dr. Russakov noted that he was "not at all sure that Mr. Armistead is being totally honest with me," and that he could "find no pathology that is treatable to explain his ongoing pain problem."
7. Based upon Dr. Russakov's specific authorization, Plaintiff returned to work at a light-duty position on May 17, 2007, essentially consisting of counting and recording the number *Page 6 
of subcontractor trucks arriving at the jobsite. This particular light-duty position was not a make-work position, as it existed before Plaintiff's injury, Defendant filled this position with another employee upon Plaintiff's later suspension from work, and this position continued to be filled as of the date of the hearing before the Deputy Commissioner. Thus, the Full Commission finds, based upon the greater weight of the evidence, that this light-duty position was suitable employment for Plaintiff.
8. When Plaintiff arrived on the job site on May 17, 2007, he underwent a mandatory, routine drug screen. Such drug testing is fundamental to Defendant's line of work, given the nature of their operations, and is provided for in Defendant's policies and procedures manual. Plaintiff's drug test was positive for cocaine metabolites and a confirming test taken by an outside laboratory corroborated the initial positive test. Pursuant to standing policies and procedures, Defendant immediately suspended Plaintiff for 90 days.
9. By failing a mandatory drug test, Plaintiff engaged in misconduct for which a non-disabled employee would ordinarily have been terminated. Defendant's policies and procedures required the suspension of Plaintiff for failing his mandatory drug test. The Full Commission finds as fact that Plaintiff's suspension from work by Defendant on May 17, 2007 resulted in a constructive refusal of suitable employment justifying the suspension of his temporary total disability compensation.
10. On June 6, 2007, Plaintiff underwent a functional capacity evaluation (FCE). The results of this FCE indicated that Plaintiff had the ability to work at a medium-level capacity. The FCE defined this capacity as exerting 20 to 50 pounds occasionally, and/or 10 to 25 pounds frequently, and/or up to 10 pounds constantly. *Page 7 
11. On June 8, 2007, Plaintiff returned to Dr. Russakov, who reviewed the FCE results. Dr. Russakov noted that, although Plaintiff continued to report pain, there was no discomfort indicated as Plaintiff moved about during the examination. Dr. Russakov concluded that Plaintiff was at maximum medical improvement, and issued a zero (0) percent permanent partial disability rating, since the only physical finding observed was the limitation in movement based upon Plaintiff's subjective reports of discomfort. Dr. Russakov also noted that there was no reason why Plaintiff could not return to his former employment as of June 8, 2007.
12. Plaintiff requested a second (2nd) opinion concerning Dr. Russakov's permanent partial disability rating. Plaintiff presented to Dr. Edwin Brannan Cooper on July 10, 2007 for a second opinion on his permanent partial disability rating. Dr. Cooper reviewed Plaintiff's previous medical records, took an extensive history, and performed a physical examination upon Plaintiff. The record herein indicates that Plaintiff provided to Dr. Cooper information on the nature and the circumstances surrounding his January 10, 2007 work injury that was inconsistent with information previously provided to Dr. Russakov and to Defendant. Dr. Cooper recommended further orthopaedic and neurologic evaluations, opined that Plaintiff was not yet at maximum medical improvement, and thus concluded that a permanent partial disability rating was premature.
13. Subsequent to Dr. Cooper's evaluation of Plaintiff, the parties agreed to have him evaluated by Dr. Scot Eric Reeg, an orthopedic surgeon. Plaintiff presented to Dr. Reeg on January 24, 2008 with complaints of neck, back, and left arm pain. Dr. Reeg recommended cervical spine magnetic resonance imaging (MRI), and noted that Plaintiff's back complaints were not of clinical significance. Further, Dr. Reeg opined that Plaintiff could return to at least light-duty work pending the results of the MRI. *Page 8 
14. Plaintiff obtained the cervical spine MRI, and Dr. Reeg noted that it was "consistent with a 49-year-old but nothing that really in my opinion necessitates any consideration at all for surgery" or "any further treatment." Consistent with the recommendations of Dr. Russakov, Dr. Reeg was of the opinion that Plaintiff did not require a permanent partial disability rating, and could return to work at a medium-level capacity. Further, Dr. Reeg cited "motivational issues" and a "symptomatic preoccupation" as barriers to Plaintiff returning to work, and found "very little to support [Plaintiff's] subjective complaints." Finally, Dr. Reeg testified that Plaintiff's observed neck and back issues were not necessarily "a byproduct of a significant work-related injury."
15. The Full Commission gives greater weight to the opinions of Dr. Russakov and Dr. Reeg over those of Dr. Cooper. Dr. Russakov treated Plaintiff for a longer period of time, and it appears that Plaintiff provided to Dr. Cooper inconsistent information in comparison to what he provided Dr. Russakov and Defendant concerning the nature and circumstances surrounding his January 10, 2007 work injury.
16. According to Plaintiff, he did not attempt to return to work after his January 10, 2007 work injury, other than on May 17, 2007, when he failed the mandatory drug test. In his testimony, Plaintiff made a vague reference to seeking work since that time, but provided no corroborating evidence. Dr. Russakov cleared Plaintiff to return to full-duty, full-time work in his previous position with Defendant-Employer as early as June 8, 2007, when he found Plaintiff to be at maximum medical improvement and assigned a zero (0) percent impairment rating.
17. The Full Commission finds as fact that Plaintiff failed to meet his burden of proving that he cannot, as a result of his January 10, 2007 work injury, obtain suitable employment with another employer that enables him to earn his pre-injury wages. *Page 9 
18. The Full Commission finds that Plaintiff is not entitled to ongoing medical treatment in connection with his January 10, 2007 work injury, as Plaintiff's current medical condition is not causally related to his work injury. Plaintiff's testimony regarding his current level of injury with respect to his neck, lower back, and left shoulder is not credible. Plaintiff's refusal to acknowledge his failed drug test during his hearing testimony, his inconsistent reporting of symptoms and the circumstances surrounding his January 10, 2007 work injury to his treating physicians, and the medical evidence demonstrating that Plaintiff exaggerated his complaints all negatively affect his overall credibility concerning the current extent of his neck, lower back, and left shoulder injuries.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident or a specific traumatic incident arising out of and in the course and scope of his employment with Defendant on January 10, 2007. N.C. Gen. Stat. § 97-2(6) (2007).
2. Defendant offered Plaintiff a light-duty position suitable to his temporary restrictions on May 17, 2007, and Plaintiff returned to work at such position on that same day. N.C. Gen. Stat. § 97-32.1 (2007). This particular light-duty position was not a make-work position, as it existed before Plaintiff's injury, Defendant filled this position with another employee upon Plaintiff's later suspension from work, and this position continues to be filled today. Saums v. Raleigh CommunityHosp., 346 N.C. 760, 487 S.E.2d 746 (1997); Peoples v. Cone Mills,316 N.C. 426, 342 S.E.2d 798 (1986). *Page 10 
3. By failing a mandatory drug test, Plaintiff engaged in misconduct for which a non-disabled employee would ordinarily have been terminated. Defendant's policies and procedures required the suspension of Plaintiff for failing his mandatory drug test. Thus, Plaintiff's suspension from work by Defendant on May 17, 2007 resulted in a constructive refusal of employment on the part of Plaintiff, and he is not entitled to a reinstatement of his temporary total disability compensation. N.C. Gen. Stat. § 97-32 (2007); McRae v. Toastmaster, Inc., 358 N.C. 488,597 S.E.2d 695 (2004); Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
4. In order to prove disability, Plaintiff must prove that he is unable to earn the same wages he earned before his January 10, 2007 work injury, either in the same employment or in other employment. Hilliardv. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet this burden in one (1) of four (4) ways:
 (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment [citation omitted]; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort . . . been unsuccessful in . . . obtain[ing] employment [citation omitted]; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment [citation omitted]; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury [citation omitted]. Russell v. Lowes Production Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Once Plaintiff satisfies his burden of proving disability, Defendants must prove not only that suitable employment is available, but also that Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations. Kennedy v. DukeUniv. Med. Ctr., 101 N.C. App. 24, 398 S.E. 2d 677 (1990). Defendants may overcome *Page 11 
the presumption of disability by providing evidence that: (1) suitable employment is available for Plaintiff; (2) Plaintiff is actually capable of securing employment, taking into account both physical and vocational limitations; and (3) the proffered employment would enable Plaintiff to earn some wages. Franklin v. Broyhill Furniture Indus.,123 N.C. App. 200, 472 S.E. 2d 382, cert. denied, 344 N.C. 629,477 S.E. 2d 39 (1996). If suitable employment is not otherwise available, Defendants may provide vocational rehabilitation services in order to assist Plaintiff in securing suitable employment. Cross v. FalkIntegrated Technologies, Inc., ___ N.C. App. ___, 661 S.E.2d 249 (2008).
6. In this case, the evidence established that Plaintiff failed to meet his burden of proving that he cannot, as a result of his January 10, 2007 work injury, obtain suitable employment with another employer that enables him to earn his pre-injury wages. Hilliard, 305 N.C. 593,290 S.E.2d 682 (1982). Plaintiff returned to work after his January 10, 2007 work injury on May 17, 2007, but he was properly suspended for failing a mandatory drug test, which constituted misconduct for which a nondisabled employee would have been suspended, and he did not look for work elsewhere. Plaintiff was capable of working full-duty, full-time in his previous position as early as June 8, 2007. Plaintiff has no permanent partial disability related to his January 10, 2007 work injury, and he is able to return to work in his previous field of employment. The evidence further established, as set forth above, that Plaintiff's testimony regarding his current level of injury with respect to his neck, lower back, and left shoulder was not credible. Therefore, Plaintiff is not entitled to temporary total disability compensation after May 17, 2007. Russell, 108 N.C. App 762, 425 S.E.2d 454 (1993).
7. Plaintiff is not entitled to ongoing medical treatment in connection with his January 10, 2007 work injury, as Plaintiff's current medical condition is not causally related to *Page 12 
his work injury. N.C. Gen. Stat. § 97-25 (2007), Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for additional indemnity compensation is DENIED.
2. Plaintiff's claim for additional medical compensation is DENIED.
3. Each side shall pay its own costs, except that Defendant shall pay any expert witness fees, not already paid.
This the ___ day of February 2009.
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________________ PAMELA T. YOUNG CHAIR
S/_______________________ DANNY LEE McDONALD COMMISSIONER *Page 1